UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BROWN, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON., <br><br> Defendant. | Case No. 1:17-cv-01285-AWI-EPG <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFEDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THAT PLAINTIFF'S CLAIMS BE DISMISSED WITH PREJUDICE <br><br> (ECF NO. 58) |

I.  **BACKGROUND**[1]

Plaintiff, Bruce Brown, a *pro se* state prisoner, filed this California products liability suit against Defendant Johnson & Johnson in California state court on June 26, 2019; Defendant removed the suit to this Court on September 12, 2017. Plaintiff asserts that Defendant failed to adequately warn that its product, the pharmaceutical drug Risperdal, could cause gynecomastia and tardive dyskinesia.[2] Pending before the Court is Defendant's motion for summary judgment.

---

[1] The Court issues these findings and recommendations pursuant to a referral from the District Judge. (ECF. No. 71)

[2] The evidentiary record does not contain a definition of gynecomastia or tardive dyskinesia. But www.mayoclinic.org defines gynecomastia as the "swelling of the breast tissue in boys or men, caused by an imbalance of the hormones estrogen and testosterone," while tardive

(continued…)

1

(ECF No. 58) For the following reasons, the Court recommends that the motion be granted.

## II. PERTINENT FACTS

As set forth below, the Court recommends summary judgment on Plaintiff's inability to provide sufficient evidence that Risperdal specifically caused his gynecomastia and tardive dyskinesia (assuming he suffered from these ailments) or that his medical providers would not have prescribed Risperdal had a different, more effective warning been in place (referred to herein as "warnings causation"). The Court declines to address Defendant's other arguments for dismissal arguments for dismissal. Therefore, facts unrelated to these grounds for dismissal are not set forth below.[3]

Risperdal was approved by the United States Food and Drug Administration ("FDA") in 1993 for use in "management of the manifestations of psychotic disorders" for adults with schizophrenia and other psychotic disorders. (Undisputed Material Fact "UMF" 86) The drug's original FDA-approved warning label warned of gynecomastia but characterized its occurrence as "rare." (UMF 88, 89) In 2007, the report of gynecomastia as "rare" was removed from the label. (UMF 89) The Risperdal labels approved in 2007, 2008, and 2009, specifically warn of tardive dyskinesia and gynecomastia. (UMF 90) In 2010, the Risperdal label was revised to include gynecomastia under the same section but under a new subheading entitled "Reproductive System and Breast Disorders." (UMF 91) The Risperdal label in effect when Plaintiff was prescribed the medication in 2016 continued to contain the same warnings for tardive dyskinesia and gynecomastia. In addition, the 2016 label contained language based on more recent clinical trials. (UMF 91)

Plaintiff claims that he first received Risperdal at Deuel Vocational Institution ("DVI") in

---

dyskinesia is defined by https://www.mentalhealthamerica.net/tardive-dyskinesia as a "neurological disorder caused by the long-term use of neuroleptic drugs, or ani-psychotic medications." *See* https://mentalhealthamerica.net/tardive-dyskinesia

[3] A significant portion of Defendant's undisputed facts are irrelevant, and, in some cases, gratuitous and prejudicial. For example, facts concerning Plaintiff's criminal convictions and inmate status are irrelevant to the actual merits of the case and appear to be included solely to prejudice Plaintiff. (*See* UMF 2, 36). Defendant does not even pretend that Plaintiff's history is legitimately relevant to this motion. Nevertheless, it introduces the Plaintiff by discussing his prior convictions. (ECF No. 58-1, p. 2) The Court finds such tactics inappropriate and does not consider such irrelevant facts in support of the motion for summary judgment.

1997; however Plaintiff's records do not corroborate this. (UMF 1) Plaintiff was next prescribed Risperdal in mid-2007 while at Sacramento Main Jail because he was suffering from mood swings, irritability, and impulse control issues. (UMF 11) Plaintiff was then transferred to DVI and given Risperdal from mid-July 2007 through early October 2007. (UMF 12) Dr. Malet, a reception center physician at DVI, continued prescriptions for inmates transferred into the facility, including Plaintiff, until they could be seen by a psychiatrist. (UMF 13) In October 2007, psychiatrist Donald Tusel discontinued Plaintiff's Risperdal prescription. (UMF 16)

Plaintiff's next alleged period of Risperdal use occurred while Plaintiff was incarcerated at the Alameda County facility Santa Rita jail. (UMF 18) Medical records show that Plaintiff was given Risperdal from January 2009 through September 2009. (UMF 19) In January 2009, Dr. Mcheko Graves-Matthews prescribed Risperdal for Plaintiff; she discontinued Plaintiff's prescription on September 29, 2009. (UMF 21) Dr. Graves-Matthews prescribed Risperdal "frequently" and made herself aware of the warnings and precautions in the Risperdal label before prescribing the drug. (UMF 57) Dr. Graves-Matthews was aware of the risks of gynecomastia and tardive dyskinesia before prescribing Risperdal to Plaintiff in January 2009. (UMF 58) Dr. Graves-Matthews relied on the label, as well as her own experience, when deciding whether to prescribe Risperdal to Plaintiff and believed it was the correct medication for him. (UMF 60) Plaintiff maintains that Dr. Graves-Matthews did not, however, warn him of the drug's potential side effects. (ECF 65, Plaintiff's Responses to Defendant's Undisputed Facts Number 60)

Plaintiff's final period of Risperdal use occurred while Plaintiff was incarcerated at the CDCR's Substance Abuse Treatment Facility and State Prison. (UMF 22) According to Plaintiff's medical records, Plaintiff was given Risperdal from March 2016 to August 2016. (UMF 23).[4] Dr. Zachary Torry restarted Risperdal in February 2016. (UMF 25) Dr. Torry discontinued Plaintiff's Risperdal in April 2016. (UMF 26) Defendant contends Dr. Torry then prescribed Risperdal to Plaintiff again in May 2016, but Plaintiff does not recall this. (UMF 27;

---

[4] In response to this fact, Plaintiff indicates that he does not recall receiving Risperdal at SATF. But any factual dispute on this point is immaterial to the Court's recommendations below.

3

Plaintiff's Response to Defendant's Undisputed Facts number 27) Plaintiff did not restart Risperdal until mid-June 2016. (UMF 29) In August 2016, Plaintiff decided to stop taking Risperdal. (UMF 32)

Dr. Torry prescribed Risperdal "fairly frequently," relying on the medication's label, medical literature and his experience. (UMF 61) Dr. Torry testified that, when he prescribed Risperdal to Plaintiff in February 2016, he discussed the "indications, risks, and benefits of Risperdal with Plaintiff, including the risks of tardive dyskinesia and gynecomastia." (UMF 61) But Plaintiff "sincerely doubts" that this conversation occurred. (Plaintiff's Responses to Defendant's Undisputed Facts number 61)

The first mention of Plaintiff's chest in his medical records appears in 2010, when Plaintiff requested health care services at Santa Rita Jail. (UMF 42) Plaintiff visited Medical Insights Diagnostic Center for a mammogram and ultrasound of his right breast on May 3, 2018. (UMF 43) After visiting Medical Insights Diagnostic Center, Plaintiff requested copies of Risperdal and Zoloft package inserts to determine what could have caused the changes to his breast. (UMF 44) Plaintiff began to suspect in 2010 that Risperdal might have caused the changes to his breast. (UMF 45) In April 2011, a second ultrasound was done on Plaintiff's breast, which showed "no evidence of a discrete mass." (UMF 46) A right breast ultrasound and bilateral mammogram were performed on May 13, 2011, which found "no focal masses." (UMF 47) Images of the right breast showed "no masses or cysts;" the ultrasound results were marked as "normal." (UMF 47) A third ultrasound was carried out on December 20, 2017, the results of which showed an area with "probable gynecomastia; no discrete system or solid mass." (UMF 48) The results did not mention that Plaintiff's breast issues were caused by Risperdal. (UMF 48) In April 2018, a bilateral mammogram of both breasts reported that the "breasts are fatty," found "no evidence of hypertrophic glandular tissue," and noted "no masses or abnormal calcifications." (UMF 49) In June 2018, Plaintiff had another bilateral mammogram of both breasts and an ultrasound of his left breast. (UMF 50) The June 2018 left breast ultrasound was "negative" and

found "[n]o mass, abnormal fluid collection, or abnormal calcific densities."[5] (UMF 50)

Plaintiff claims that Risperdal caused his alleged gynecomastia and tardive dyskinesia. There is no medical record stating that such a causal connection exists. (UMF 68) Defendant contends that no healthcare provider has ever told Plaintiff that Risperdal caused his alleged gynecomastia. However, Plaintiff states that healthcare providers have told him that Risperdal caused his "side effects." (Plaintiff's Responses to Defendant's Undisputed Facts number 69) He refuses to give the names of these medical providers for fear that Defendant's lawyers will "terrorize" them. (*Id.*) Plaintiff also claims that a nurse practitioner, Laura Merritt, told him at an unspecified time that there was a "good possibility" that his Risperdal usage caused his gynecomastia, "before her alliance with the defendants [sic] lawyer." (Plaintiff's Responses to Defendant's Undisputed Facts number 52) However, during her deposition, Nurse Merritt testified that she never told Plaintiff that Risperdal caused any abnormalities in his chest. (UMF 52) Plaintiff admitted that no healthcare provider has ever told him that he has tardive dyskinesia. (UMF 72) A diagnosis of tardive dyskinesia does not appear in Plaintiff's medical records. (UMF 73)

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On February 28, 2019, Defendant filed the instant motion for summary judgment based, in part, on the above factual background and legal arguments addressed below. (ECF No. 58) Plaintiff was given an extension of time until May 13, 2019, to oppose the motion. He filed his opposition on May 6, 2019. (ECF Nos. 65, 66) Defendant filed a reply on May 20, 2019. (ECF No. 68)

Defendant argues that Plaintiff's case should be dismissed for the following reasons: (1) Plaintiff's inability to establish that Risperdal can cause gynecomastia and tardive dyskinesia generally ("general causation"); (2) Plaintiff's inability to establish that Risperdal caused

---

[5] Plaintiff does not dispute that these tests occurred or what these tests found. However as to the May 2011 test, Plaintiff maintains that the results are misleading because the test only addressed whether cancerous masses were present. As to the 2018 tests, Plaintiff maintains that the findings are untrustworthy because they were ordered for an unknown reason, by an unknown doctor, and only after Defendant's attorneys got involved. *See* (Plaintiff's Responses to Defendant's Undisputed Facts 47-50)

Plaintiff's gynecomastia or tardive dyskinesia specifically ("specific causation"); (3) Plaintiff's failure to bring claims within the relevant statute of limitations; (4) Plaintiff's failure to demonstrate a deficiency in Risperdal's warning; (5) Plaintiff's inability to show warnings causation; and (6) Plaintiff's inability to show that he actually suffers from gynecomastia or tardive dyskinesia.

As discussed below, this Court recommends granting summary judgment due to Plaintiff's lack of sufficient evidence regarding specific causation and warnings causation. Because Plaintiff's failure to warn claim cannot proceed without such evidence, the Court does not address Defendant's remaining arguments.

### IV. LEGAL STANDARDS

#### a. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremkin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this initial burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (quoting *Celotex Corp*, 477 U.S. at 324). The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[T]he judge's

function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (quoting *Anderson*, 477 U.S. at 249).

Nevertheless, the evidence must be significantly probative to support the claims. *Id.* at 248–49. The nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

Plaintiff, although *pro se*, is not excused from the requirement of presenting admissible evidence to show a triable issue of fact in opposition to summary judgment. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir. 1984) (although the court must liberally construe *pro se* plaintiff's pleadings, on a summary judgment motion the plaintiff nonetheless "must present some 'significant probative evidence tending to support the complaint.'") (quoting *General Business Systems v. North American Phillips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983)). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002). However, the correct focus is not on the admissibility of the evidence's form, but rather on the admissibility of the evidence's content. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.")

**b. California Failure to Warn Law**

Plaintiff's asserts a cause of action for failure to warn under California products liability law. (Plaintiff's Responses to Defendant's Undisputed Facts Number 4). This Court applies California law in this diversity action. *See Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001). "Generally speaking, manufacturers have a duty to warn customers about the hazards inherent in their products." *Johnson v. American Standard, Inc.*, 179 P.3d 905, 910 (Cal. 2008) (citation omitted) A warning informs customers about hazards of which

they are unaware, so that they can avoid the product or minimize its danger by careful use. "[L]iability for failure to warn is conditioned upon the manufacturer's actual or constructive knowledge of the risk." *Webb v. Special Electric Co., Inc.*, 370 P.3d 1022, 1030 (Cal. 2016) (citing *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 555 (Cal. 1991)). "In general, a product seller will be strictly liable for failure to warn if a warning was feasible and the absence of warning caused plaintiff's injury." *Id.* (citing *Blackwell v. Phelps Dodge Corp.* 203 Cal.Rptr. 706, 710 (Cal.App. 1984)).

"California follows the learned intermediary doctrine, which states that in the case of prescription drugs, the duty to warn 'runs to the physician, not the patient.'" *Motus v. Pfizer Inc.*, 196 F.Supp.2d 984, 991 (C.D. Cal. 2001), *aff'd* (9th Cir. 2004) 358 F.3d 659 (quoting *Carlin v. the Superior Court of Sutter Cnty.*, 920 P.2d 1347, 1354 (Cal. 1996)). "Thus, a manufacturer discharges its duty to warn if it provides adequate warnings to the physician about any known or reasonably knowable dangerous side effects, regardless of whether the warning reaches the patient." *Id.*

### c. Causation

The plaintiff must also show that the product at issue could generally cause the complained-of conditions and that the product did in fact cause those conditions in the plaintiff's case. *See In Re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1133 (9th Cir. 2002) (noting that causation in toxic tort or pharmaceutical personal injury cases "is typically discussed in terms of generic and specific causation.") General or generic causation means "whether the substance at issue had the capacity to cause the harm alleged." *Id.* Specific causation refers to whether a specific individual suffers from an ailment as a result of exposure to the substance. *Id.* That is, that the challenged conduct was "the cause-in-fact" of the particular plaintiff's injury. *Id.*

The "law is well-settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." *Cottle v. Super. Court*, 3 5 Cal.Rptr.2d 882, 892 (Cal.App. 1992) (further citation omitted). And where, as here, "the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." *Stephen v. Ford Motor Co.*, 37 Cal.Rptr.3d 9, 17 (Cal.App. 2005); *see also*

*Sanchez v. Stryker Corp.*, 2:10-CV-08832-ODW, 2012 WL 1570569 at *6 (C.D. Cal. May 2, 2012) ("Probable causes in a medical tort case are beyond the experience of laymen and can only be explained through expert testimony."). As the court set forth in *Cooper v. Takeda Pharm. Am. Inc.*: "[m]ere possibility alone is insufficient to establish a prima facie case. That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances that can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable casual explanations, it becomes more likely than not that the injury was a result of its action." 191 Cal.Rptr.3d 67, 85 (Cal.App. 2015).

"A plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury." *Motus,* 196 F.Supp.2d at 991 (citing *Plummer v. Lederle Laboratories*, 819 F.2d 349, 358 (2d Cir. 1987) (applying California law) (further citations omitted). That is, assuming an inadequate warning, "'a product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician.'" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1238 (9th Cir. 2017) (quoting *Motus*, 358 F.3d at 661).

**V.     ANALYSIS**

   **a. Specific Causation**

Defendant argues that Plaintiff cannot meet his burden at this stage to show a genuine issue of material fact as to specific causation. Defendant initially maintains that Plaintiff cannot show he suffers from gynecomastia or tardive dyskinesia. Defendant also references other medications Plaintiff indisputably took that might have caused any gynecomastia or tardive dyskinesia. Finally, Defendant notes a complete lack of medical evidence attributing any gynecomastia or tardive dyskinesia (assuming Plaintiff suffers from same) to Plaintiff's Risperdal usage. The Court declines to address the first two arguments as it finds the third persuasive and determinative.

Because Plaintiff will ultimately shoulder the burden of proof on specific causation at

trial, Defendant may satisfy its burden at summary judgment by pointing to Plaintiff's lack of evidence on this issue. *Soremkin,* 509 F.3d at 984. evidence of specific causation cannot be Plaintiff's lay opinion. Instead, Plaintiff must present evidence from which a jury could conclude, without engaging in speculation, that his gynecomastia and tardive dyskinesia resulted from his Risperdal use. Expert evidence is required to meet this burden. *See Sanchez*, 2012 WL 1570569 at *6.

Here, Plaintiff lacks competent evidence of specific causation sufficient to raise an issue of material fact for trial; accordingly, the Court recommends granting Defendant's motion for summary judgment. No medical record attributes Plaintiff's alleged gynecomastia or tardive dyskinesia to his Risperdal usage. Nor has any medical provider testified in a deposition, affidavit, or declaration that Risperdal caused Plaintiff's alleged gynecomastia or tardive dyskinesia. While a causal connection between Plaintiff's Risperdal usage and his gynecomastia and tardive dyskinesia might be theoretically possible, to survive summary judgment, "a mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendants." *Garbell v. Cibejo Hardwoods, Inc.*, 122 Cal.Rptr.3d 856, 861 (Cal.App. 2011); *see also Matrixx Initiatives Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) ("The fact that a user of a drug has suffered an adverse event, standing alone, does not mean that the drug caused that event.").

In the absence of a medical opinion, Plaintiff relies on articles from unidentified sources and law firm websites alleging that Risperdal causes gynecomastia and tardive dyskinesia (ECF No. 66, pp. 11-15, 25-28). This is insufficient to raise a genuine issue of material fact as to causation. The articles and webpages are hearsay, which is generally not appropriately considered at the summary judgment stage absent an indication that the evidence can be reduced to an admissible form for trial. *See Faulks v. Wells Fargo & Co.*, 231 F.Supp.3d 387, 396 (N.D. Cal. 2017) (citations omitted); *see also* Fed. R. Evid. 801 (defining hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing," which "a party offers in evidence to prove the truth of the matter asserted in the statement.") Moreover, the articles are not

specific to Plaintiff and merely allege a link between Risperdal and gynecomastia and tardive dyskinesia generally. Finally, the sources of the articles and webpages are not identified and therefore not subject to cross examination.

Furthermore, even assuming this evidence were admissible, it is insufficient to show Risperdal caused *Plaintiff's* ailments. Plaintiff's belief that Risperdal caused his symptoms is likewise insufficient: to allow Plaintiff to opine that Risperdal caused his symptoms would be to allow an improper lay opinion on a technical issue requiring competent medical testimony. *Sanchez*, 2012 WL 1570569 at *6.

Plaintiff also represents that many healthcare providers "have said" that Risperdal is the most likely cause of his "side effects." (Plaintiff's Responses to Defendant's Undisputed Facts Number 69) Plaintiff did not give the names of these healthcare providers, because he did not want them "terrorized by defendants [sic] lawyers." *See* (Plaintiff's Responses to Defendant's Undisputed Facts Number 69) These out-of-court statements do not raise an issue of fact for multiple reasons.

First, Plaintiff's statements about what someone else told him are not admissible because they are hearsay. Plaintiff seeks to use the statements of out-of-court declarants for the truth of the matter provided therein—they are classic hearsay statements and accordingly inadmissible. *U.S. v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015); Fed. R. Evid. 801(c), 802; *see also Johnson v. Peralta Community College Dist*., No.C-94-4255 MMC (PJH), 1997 WL 227903 at *6 (N.D. Cal. April 28, 1997) ("Plaintiff may not prove that she is disabled by attesting, second hand, to her doctor's conclusions."). Again, to be considered on a motion for summary judgment, any evidence must be capable of reduction to an admissible form at trial. There is no indication that Plaintiff can reduce these hearsay statements of unidentified witnesses to an admissible form for trial. *See, e.g., JL Beverage Co. LLC., v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (finding hearsay statements not subject to exception were properly disregarded at summary judgment where party did not argue the out-of-court declarants would be available to testify at trial); *Terminalift LLC v. International Longshore and Warehouse Union Local 29*, No. 11-cv-1999 W(WVG), 34 F.Supp.3d 1099, 1115 (S.D. Cal. 2013) (refusing to find that hearsay

statements of unidentified individuals could create genuine issue of material fact for trial).

Second, even if the Court determined that Plaintiff could reduce these out-of-court statements to admissible form at trial, to find an issue of fact, the Court would have to speculate that the statements Plaintiff references are competent expert testimony under Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed R. Evid. 702. As Plaintiff provides no information about these alleged medical providers, the Court is unable to determine whether they are competent to opine as to medical causation. Further, Plaintiff only references vague statements that Risperdal is the most likely cause of his side effects. Given the conclusory nature of these statements, the Court is unable to determine whether they are based on sufficient facts or data or otherwise sufficiently reliable to withstand scrutiny under Rule 702. The out-of-court statements are simply too conclusory to raise an issue of fact as to specific causation. *See Jennings v. Palomar Pomerado Health Systems, Inc.*, 8 Cal.Rptr.3d 363, 369-70 (2003) (striking expert opinion and noting that "plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury").

Third, as these medical providers are unidentified, their identities have, by definition, not been disclosed to Defendant. Plaintiff generally may not oppose summary judgment with the testimony of witnesses not disclosed during discovery. *See Cambridge Electronics Corp., v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322 (C.D. Cal. 2004) (excluding summary judgment evidence not appropriately provided during the discovery process). Indeed, Defendant has not had the

opportunity to cross examine these supposed witnesses to determine their credibility and the basis for their statements.

As for the alleged statement of Nurse Merritt that there was a "good possibility" that Plaintiff's Risperdal usage caused his gynecomastia, this statement is also insufficient to raise a material issue of fact for trial. Again, the alleged statement is hearsay, and there is no indication that Plaintiff can reduce the statement to an admissible form for trial, especially because Nurse Merritt testified in her deposition that she never told Plaintiff that Risperdal caused any abnormalities in his chest:

> Q. And at any point in time did you tell Mr. Brown that any concerns he had in his chest were caused by Risperdal?
>
> A. No.

*See* L. Merritt Dep. Tr., Ex. 8 to Barkeshli Decl. at 104:11-21; 79:6-21; 84:13-22; 113:8-12. There is also no indication that Nurse Merritt is qualified to opine on medical causation in Plaintiff's case. Even if she was, this barebones opinion is too conclusory to pass muster under Federal Rule of Evidence 702, as the Court is unable to determine its reliability, relevance, or even the facts upon which it is based. *See Jenning*, 8 Cal.Rptr.3d at 369-70 (2003). Again, a mere "possibility" that a product caused a medical condition is insufficient to allow the fact finder to infer medical causation; instead, there must be a medical probability. *See Garbell*, 122 Cal.Rptr.3d at 861.

Plaintiff also attacks the credibility of his treating medical providers and medical testing, arguing that his medical providers are aligned with Defendant because of possible threats made to them by Defendant's lawyers. In support, he claims their diagnoses changed after unexplained testing after Defendant's lawyers become involved. But Plaintiff's argument is based on speculation. These are medical professionals subject to ethical constraints, and there is no evidence of threats or coercion from defense counsel.

Finally, summary judgment on the specific causation issue does not depend on the credibility of Plaintiff's treating medical providers or even whether Plaintiff truly suffers from gynecomastia or tardive dyskinesia; it depends on the lack of sufficient evidence tying Plaintiff's

alleged gynecomastia and tardive dyskinesia to his Risperdal usage. The Court has not relied upon any medical testimony or records in reaching its conclusion, but rather the absence of any medical testimony or records indicating a causal connection.

Thus, the Court recommends granting Defendant's motion for summary judgment, as Plaintiff has not submitted any admissible evidence from which a jury could find that Risperdal caused his alleged gynecomastia and tardive dyskinesia.

### b. "Warnings Causation"

Defendant also argues that summary judgment is appropriate because Plaintiff lacks evidence that any deficiency in the warnings caused his injury; that is, that Plaintiff's prescribing medical providers would not have prescribed Risperdal to Plaintiff had another warning been used on the label for Risperdal. Again, Plaintiff will shoulder the burden of proof on this issue and Defendant can meet its summary judgment burden by pointing to Plaintiff's lack of evidence. A plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury. *Plummer v, Lederle Laboratories*, 819 F.2d 349, 358 (2d Cir. 1987) (applying California law); *Motus*, 196 F.Supp.2d at 991. To demonstrate that the inadequate warning caused the plaintiff's injuries, the plaintiff must show a causal link between the warning label and the physician's decision to prescribe the drug. *See Wendell*, 858 F.3d at 1238.

In *Motus*, for example, the issue was whether the pharmaceutical drug Pfizer failed to adequately warn of risks causing the plaintiff's injuries and whether this failure to warn was the proximate cause of those injuries. In siding with the defendant, the *Motus* court first held that California law did not employ a rebuttable presumption that an inadequate warning was the "proximate cause of the ingestion of the drug." *Id.* at 991. Instead, the "burden is on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Id.* at 995 (quoting *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 813 (5th Cir. 1992)). The *Motus* court explained what evidence a plaintiff needed to show that the deficiency in the warning was the

proximate cause of the plaintiff's injury:

> Plaintiff's lawyer did ask Dr. Trostler: "If you had been told that Zoloft can cause an increased risk in suicide during the first few weeks of drug treatment, is that the kind of information you would pass on to your patients?" Dr. Trostler responded, "Yes." Plaintiff argues that this response creates a genuine issue as to whether Dr Trostler would have changed his behavior had Pfizer provided adequate warnings. The Court does not agree. Given that this case is about the sufficiency of the warnings accompanying Zoloft, the appropriate question would have been: "If Zoloft's package insert had contained a warning that Zoloft can cause an increased risk in suicide during the first few weeks of drug treatment, would you have prescribed Zoloft to Mr. Motus?" But Plaintiff's lawyer did not ask this question…the testimony Dr. Trostler did give does not establish that if that warning had been provided, he would not have prescribed Zoloft or would have told Mr. Motus something other than what he did say.

Here, as in *Motus*, Plaintiff has not provided any evidence that the prescribing physicians would not have prescribed Risperdal to him had a different warning been in place. *See Wendell*, 858 F.3d at 1238. Plaintiff instead focuses on whether the warning was sufficient to apprise *him* of the risks of gynecomastia and tardive dyskinesia. Plaintiff confuses the issue. Under the learned intermediary doctrine, the duty to warn runs to the prescribing physician, not the patient. *See Hatherly v. Pfizer, Inc.*, 2:13-00719, 2013 WL 3354458 at *3 (E.D. Cal. July 3, 2013) (stating that, "[u]nder California law, the learned intermediary doctrine provides that manufacturers do not have a duty to warn the ultimate consumers of a drug's potential dangers if adequate warning has been given to the physicians (i.e., 'the intermediaries'"). And, as indicated, Plaintiff points to no evidence that his prescribing medical providers would not have prescribed Risperdal had a different warning been in place. In fact, at least one of Plaintiff's prescribing physicians testified that she was aware of the risks of gynecomastia and tardive dyskinesia, the very risks Plaintiff claims the drug fail to adequately forecast, prior to prescribing the drug to Plaintiff.[6]

---

[6] Dr. Graves-Matthews testified as follows:

> Q. [Y]ou knew about gynecomastia being listed on the label before prescribing it to Mr. Brown, correct?
>
> A. Gynecomastia, yes.
>
> Q. You knew about tardive dyskinesia being in the label prior to prescribing it to Mr. Brown, correct?

(continued…)

In short, Plaintiff has not offered sufficient evidence from which a jury could find that any failure to warn was the proximate cause of his alleged injury. The Court recommends summary judgment on this basis as well.

### VI. CONCLUSION

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Defendant's Motion for Summary Judgment (ECF No. 58) be granted due to Plaintiff's inability to raise a genuine issue of material fact as to specific causation or, alternatively, due to Plaintiff's inability to raise a genuine issue of material fact as to whether any deficiency in the Risperdal warning caused or contributed to his alleged injuries; and

2. The Clerk of Court be directed to close this case.

These finding and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(10). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the court. such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 24, 2019**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

A. Yes.

Dr. Graves-Matthews Depo. Tr., Ex. 6 to Barkeshli Decl. at 57:20-58:3.